UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMILE HANKINS,

                      Plaintiff,

                                                 9:07-CV-0408

v.                                        (FJS/GHL)

NYS DEPARTMENT OF CORRECTIONAL SERVICES;
BRIAN FISCHER, Commissioner, NYS DOCS;
LUCIEN LeCLAIRE, Former Commissioner, NYS DOCS;
JOHN DOE # 1, "Mess Hall" Corrections Officer at
Shawangunk Correctional Facility; and
JOHN DOE # 2, Corrections Sergeant / Hearing Officer at
Shawangunk Correctional Facility,

                      Defendants.
_____

APPEARANCES:                            OF COUNSEL:

JAMILE HANKINS, 98-A-4240
  Plaintiff, *Pro Se*
Eastern New York Correctional Facility
Box 338
Napanoch, NY 12458

HON. ANDREW M. CUOMO              ADELE M. TAYLOR-SCOTT, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

       This *pro se* prisoner civil rights action has been referred to me for Report and

Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this

Court.  Generally, Jamile Hankins ("Plaintiff") brings this action under two statutes: (1) 42

U.S.C. §1983 (for a violation of his rights under the First, Eighth and Fourteenth Amendments);

and (2) the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42

U.S.C. § 2000cc-1 *et seq*.[1]  More specifically, Plaintiff's Complaint alleges that, while he was

incarcerated at Shawangunk Correctional Facility ("Shawangunk C.F.") in 2004, the New York

State Department of Correctional Services ("DOCS") and four of its employees ("Defendants")

violated his rights in one or both of two ways: (1) by carelessly refusing to allow him to take a

"purification" shower and then participate in a weekly religious service in accordance with the

practice of his Islamic religion, on the afternoon of March 19, 2004; and (2) by wrongfully

failing, during the days and weeks that followed, to grant *all* of the relief that Plaintiff requested

in a grievance that he filed regarding the incident.  (*See* Dkt. No. 1 [Plf.'s Compl.].)  Currently

pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 11.)  For the reasons that

follow, I recommend that Defendants' motion be granted and that Plaintiff's Complaint be

dismissed with prejudice.

---

[1]　　　Plaintiff mistakenly alleges that he is bringing his claims under "the Religious Freedom Restoration Act of 42 U.S.C. § 2000cc-1." (Dkt. No. 1, at 1 [Plf.'s Compl.].)  The Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*., was declared unconstitutional by the United States Supreme Court in 1997.  *City of Boerne v. Flores*, 521 U.S. 507, 532-536 (1997).  Because the Religious Freedom Restoration Act was amended by the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq*., a plaintiff's RLUIPA claim may be construed "as an extension of its [inartfully pleaded] RFRA claim."  *Prater v. City of Burnside*, 289 F.3d 417, 433 (6th Cir. 2002).  In short, construed with the extra liberal leniency afforded to *pro se* civil rights litigants, Plaintiff's claims arise, in part, not under the RFRA but under the RLUIPA, 42 U.S.C. § 2000cc-1 *et seq*.  *See Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) (when district court is determining what legal claims a *pro se* civil litigant has raised, "the court's imagination should be limited only by [the plaintiff's] factual allegations, not by the legal claims set out in his pleadings") [citations omitted].

2

## I.      BACKGROUND

### A.      Plaintiff's Complaint

Liberally construed, Plaintiff's Complaint alleges as follows.

On March 19, 2004, he was working in the Mess Hall at Shawangunk C.F.[2]  At approximately 12:30 p.m. that day, he approached Defendant John Doe # 1, the correctional officer who was supervising the Mess Hall, and requested that he be allowed to return to his housing unit in "Block D1" in order to take an obligatory religious "purification" shower in preparation for the weekly "Muslim Jumu'ah religious service[]," scheduled for 1:00 p.m. at Shawangunk C.F.[3]  However, Defendant John Doe # 1 refused to allow Plaintiff to return to Block D1, stating "that 'nobody is leaving the messhall [sic] due to a contraband search being conducted in housing Block D2.'"[4] As a result, Plaintiff was unable to leave the Mess Hall until approximately 2:15 p.m., thereby missing his religious service.[5]

On March 22, 2004, Plaintiff filed an Inmate Grievance Complaint regarding the incident; the grievance was assigned number "SHG 20686."[6]  Under the section of the grievance labeled "Action requested by Inmate," Plaintiff responded, "That this will not happen again, because I was prevented from performing my religious duty's [sic], and a significant good religious day

---

[2]      (Dkt. No. 1, ¶ 8 [Plf.'s Compl.].)

[3]      (*Id.* at ¶¶ 9-10.)

[4]      (*Id.* at ¶ 11.)

[5]      (*Id.* at ¶ 12.)

[6]      (*Id.* ¶ 13.)

3

[sic]."[7]

On April 5, 2004, the Shawangunk C.F. Inmate Grievance Resolution Committee ("IGRC") issued a written ruling regarding Plaintiff's grievance.[8]  Under the section of the decision labeled "Response of IGRC," the IGRC stated as follows: "D2 housing unit was being searched at the time and not D1 unit.  Furthermore, inmates housed in D1 during the search and scheduled for religious services were allowed to attend services on time without compromising the security of the search.  Grievant could've been offered the same opportunity."[9]  At the grievance hearing that accompanied the issuance of the IGRC's written ruling, John Doe # 2, the Hearing Officer assigned to conduct Plaintiff's grievance hearing, "gave no [other] reason for [the ruling]."[10]  On the bottom of the written ruling issued by the IGRC, there were four boxes, which preceded the following four statements: (1) "I disagree with the IGRC response," (2) "I agree with the IGRC response," (3) "I have reviewed deadlocked responses," and (4) "I wish to appeal to the Superintendent."[11]  Construing the IGRC's ruling as a "denial" of his grievance, Plaintiff checked the *second* and fourth boxes on April 5, 2004.[12]

At some point between April 5, 2004, and April 13, 2004, Shawangunk C.F. Superintendent Joseph T. Smith caused an investigation to be conducted regarding the subject of

---

[7]        (*Id*. at Ex. A.)

[8]        (*Id*. at ¶ 14 & Ex. B.)

[9]        (*Id*. at Ex. B.)

[10]       (*Id*. at ¶ 14.)

[11]       (*Id*. at Ex. B.)

[12]       (*Id*. ¶ 15 & Ex. B)

Plaintiff's appeal.[13]  On April 13, 2004, Superintendent Smith issued his ruling regarding

Plaintiff's appeal.[14]  In that ruling, Superintendent Smith stated as follows:

> Grievant claims that he was denied attendance at religious services.
> He wants to avoid a reoccurrence.
>
> Investigation reveals that grievant is correct.  While an area search was
> being conducted on D/2 (a messhall unit) which contributed to
> confusion by staff, grievant nonetheless should have been permitted to
> attend services.
>
> Grievance accepted only to the extent as stated above.[15]

Plaintiff signed his Complaint in this action on April 10, 2007.[16]

### B.    Defendants' Motion to Dismiss

Defendants have moved to dismiss Plaintiff's Complaint on four grounds: (1) most, if not

all, of Plaintiff's claims concerning the events of March 19, 2004, to April 13, 2004, are barred

by the three-year statute of limitations governing those claims, under 42 U.S.C. § 1983; (2)

Plaintiff's claims against DOCS are barred because (a) DOCS, an entity, is not a "person" within

the meaning of 42 U.S.C. § 1983, and (b) in any event, the Eleventh Amendment to the United

States Constitution bars Plaintiff's claim against DOCS, which is an agency of New York State;

(3) Plaintiff has failed to allege facts plausibly suggesting that Defendants Fischer and LeClaire,

both of whom were high-ranking DOCS officials during the time in question, were personally

involved in any constitutional violations alleged; and (4) Plaintiff has failed to state a claim

---

[13]     (*Id.* at ¶ 16.)

[14]     (*Id.* at ¶ 16 & Ex. C.)

[15]     (*Id.*)

[16]     (*Id.* at 4.)

under RLUIPA.[17]

In response to Defendants' first argument, Plaintiff argues that the limitations period that governs his claims is not three years (under 42 U.S.C. § 1983) but four years (under 28 U.S.C. § 1658[a]).[18]  In response to Defendants' second argument, Plaintiff argues that the broad definition of "government," set forth in 42 U.S.C. § 2000cc-5(4), allows him to assert claims against DOCS in this action.[19]  While Plaintiff does not specifically respond to Defendants' third argument, he states generally that "[a]ny other argument by defendants is misplaced, mistaken, or arbitrary."[20]  In response to Defendants' fourth argument, Plaintiff argues that Defendants placed a substantial burden on his right to religious exercise, thus enabling him to state a claim under RLUIPA.[21]

## II.    RELEVANT LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[22] or

---

[17]    (*See generally* Dkt. No. 11, Part 2 [Defs.' Mem. of Law].)

[18]    (Dkt. No. 13, Plf.'s Memo. of Law, at 3.)

[19]    (*Id*. at 2.)

[20]    (*Id*. at 2.)

[21]    (*Id*. at 1-4.)

[22]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v.*

(2) a challenge to the legal cognizability of the claim.[23]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[24] The purpose of this rule is to "facilitate a proper decision on the merits."[25] A complaint

_____

*Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[23]     *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") (citation omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[24]     *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics*

that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[26]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[27]  However, it is well established that even this liberal notice pleading standard "has its limits."[28]  As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[29]

---

*Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[25]     *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[26]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[27]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[28]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[29]     *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002)

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[30]  Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim.  *Id*. at 1965-74.  More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of

---

(affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[30]     The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Twombly*, 127 S. Ct. at 1969.

[actionable conduct]." *Id.*[31]

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[32]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[33]  In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.  For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[34]  Moreover, "courts must construe *pro se* pleadings

---

[31]     *Accord*, *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

[32]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[33]     *Hernandez*, 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted).

[34]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in

broadly, and interpret them to raise the strongest arguments that they suggest."[35]  Furthermore,

when addressing a *pro se* complaint, generally a district court "should not dismiss without

granting leave to amend at least once when a liberal reading of the complaint gives any indication

that a valid claim might be stated."[36]

However, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not

absolutely suspended."[37]  For example, an opportunity to amend should be denied where "the

_____

the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

[35]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[36]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[37]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[38]

## III.    ANALYSIS

Because some of Defendants' arguments are stronger than others, I begin with the strongest of Defendants arguments.  Furthermore, because the Court possesses the authority (and duty) to *sua sponte* review the pleading sufficiency of a prisoner's civil rights claims under the Prison Litigation Reform Act, I conduct a *sua sponte* review of various of Plaintiff's claims where appropriate.[39]

### A.    Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Defendants Fischer and LeClaire Were Personally Involved in any Constitutional Violations Alleged

A defendant's personal involvement in alleged unlawful conduct is a prerequisite for a finding of liability in a Section 1983 action.  *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). Supervisory officials such as prison superintendents are personally involved in a constitutional violation only if: (1) they directly participated in that violation; (2) they failed to remedy that violation after learning of it through a report or appeal; (3) they created, or allowed to continue, a

---

[38]    *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

[39]    *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"); 28 U.S.C. § 1915A(b) ("On review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . .").

policy or custom under which the violation occurred; (4) they were grossly negligent in managing subordinates who caused the violation; or (5) they exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright v. Smith*. 21 F.3d 496, 501 (2d Cir. 1994) (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

Here, Plaintiff states in his Complaint that Defendant Fischer is the current Commissioner of DOCS and that Defendant LeClaire was the Commissioner of DOCS at the time of the alleged violation of his constitutional rights.  However, Plaintiff fails to allege any facts plausibly suggesting that Defendants Fischer or LeClaire directly participated in any constitutional violation.  Nor does Plaintiff point to any policy, custom, poor management techniques, or failure to remedy that violated his constitutional right to practice his religion.  For example, conspicuously missing from Plaintiff's Complaint is any factual allegation that Defendant Fischer or LeClaire knew about similar violations at Shawangunk C.F. (or anywhere) before March 19, 2004, or that they even learned of the alleged violation in question by report or appeal after March 19, 2004.  Furthermore, Plaintiff has alleged facts plausibly that the DOCS' grievance procedures in place at the time resulted in a ruling that was partly, if not entirely, in Plaintiff's favor, plausibly suggesting that Defendants Fischer or LeClaire–to the extent they were responsible for supervising DOCS' grievance process–were performing their duties adequately.

For these reasons, I recommend that Plaintiff's constitutional claims (i.e., his Section 1983 claims) against Defendants Fischer and LeClaire be dismissed because of Plaintiff's failure to allege facts plausibly suggesting those two Defendants' personal involvement in the

constitutional violations alleged.

Furthermore, I find that Plaintiff has not alleged any facts plausibly suggesting that there were constitutional violations in which *any* Defendant could have been personally involved.  As an initial matter, Plaintiff's claim under the Eighth Amendment is a mere superfluity.  Based on even the most liberal constructions of his factual allegations, his sole constitutional claims consist of a First Amendment free-exercise claim and perhaps a Fourteenth Amendment procedural due process claim.

One reason that his First and Fourteenth Amendment claims fail is because he has not alleged facts plausibly suggesting anything other than *negligence* by Defendants.  For example, he alleges that Defendant John Doe # 1 denied Plaintiff access to a shower and religious service on March 19, 2004, due to his erroneous belief that a contraband search in Housing Block D2 prevented anyone from leaving the Mess Hall.  (*See*, *supra*, Part I.A. of this Report-Recommendation.)  Moreover, he alleges that Defendant John Doe # 2 neglected to orally explain (to Plaintiff's satisfaction) the written decision of the IGRC with regard to Plaintiff's grievance.  (*Id.*)  Negligence is not actionable under either the First or Fourteenth Amendment.[40]

---

[40]       *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 331-33 (1986) (stating that "injuries inflicted by governmental negligence are not addressed by the United States Constitution" and rejecting § 1983 claim based on alleged due process violation under Fourteenth Amendment); *Hudson v. Palmer*, 486 U.S. 517, 531 (1984) ("[T]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property . . . ."); *Riddick v. Modeny*, No. 07-1645, 2007 WL 2980186, at *2 (3d Cir. Oct. 9, 2007) ("The protections afforded prisoners by the Due Process Clause of the Fourteenth Amendment are not triggered by the mere negligence of prison officials."); *Jones v. Salt Lake County*, 503 F.3d 1147, 1162-63 (10th cir. 2007) ("[N]egligence does not state a § 1983 [First Amendment] claim."); *Taylor v. Dretke*, No. 05-41738, 239 Fed. App'x 882, 883-84 (5th Cir. June 28, 2007) (dismissing prisoner's access-to-courts claim because negligence is not actionable under First Amendment); *Willis v. Washington*, No. 96-2385, 1999 U.S. App. LEXIS 532, at *2-3 (7th Cir. Dec. 16, 1998) (dismissing prisoner's interference-with-mail claim because negligence is not actionable under

Another reason that his First Amendment claim fails is because he has alleged merely the denial of the right to participate in *one* weekly religious service.[41]  Courts from the Second Circuit have *repeatedly* found that an allegation that prison officials caused a prisoner to miss one religious service fails to state an actionable claim under the First Amendment.[42]  Indeed, on

_____

First Amendment).

[41]    I take judicial notice of the fact that, in the Muslim faith, "Jumu'ah" is a weekly congregational service, occurring every Friday.  *Boomer v. Irvin*, 963 F. Supp. 227, 228, n.1 (W.D.N.Y. 1997) ("As noted in this court's previous decision and order, Jummah, or 'Jumu'ah,' is a weekly Muslim congregational service commanded by the Koran to be held every Friday after the sun reaches its zenith and before the Asr, or afternoon prayer.") [internal quotation marks and citations omitted]; *Persad v. Savage*, 02-CV-0336, 2004 WL 1570286, at *7 (W.D.N.Y. May 25, 2004) ("Despite the cancellation of one . . . Juma service [on Friday, September 28, 2001], Plaintiffs and other Muslim inmates were free to practice their religion [for purposes of the First Amendment],"), *adopted*, 02-CV-0336, 2004 WL 1858140 (W.D.N.Y. Aug. 19, 2004); *cf. Williams v. Weaver*, 03-CV-0912, 2006 WL 2794417, at *5, nn.27-28 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting Report-Recommendation by Lowe, M.J.) (taking judicial notice of "the fact that, in 2003, no Islamic holidays occurred between June 25, 2003, and July 23, 2003") [citations omitted].

[42]    *See Johnson v. Newton*, 02-CV-1277, 2007 WL 778421, at *5 (N.D.N.Y. March 13, 2007) (McAvoy, J., adopting Report-Recommendation by Homer, M.J.) (granting defendant's motion for summary judgment dismissing prisoner's First Amendment free-exercise claim that defendant prevented the prisoner from entering a mosque on one occasion because, even assuming the truth of that allegation, "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion") [internal quotation marks and citations omitted]; *Williams v. Weaver*, 03-CV-0912, 2006 WL 2794417, at *5, n.29 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting Report-Recommendation by Lowe, M.J.) (granting defendant's motion for judgment on the pleadings with respect to prisoner's First Amendment free-exercise claim that defendant caused prisoner to miss two weekly religious services) [citations omitted]; *Cancel v. Mazzuca*, 205 F. Supp.2d 128, 142 (S.D.N.Y. 2002) (granting defendant's Rule 12[b][6] motion to dismiss prisoner's First Amendment free-exercise claim that defendant "prevented him, on one occasion, from attending a religious service"); *Wagnoon v. Gatson*, 00-CV-3722, 2001 U.S. Dist. LEXIS 8417, at *23-25 (S.D.N.Y. June 25, 2001) (granting defendants' Rule 12[b][6] motion to dismiss prisoner's First Amendment free-exercise claim that defendants caused prisoner to miss all or part of his midday Muslim prayers on one day) [citations omitted]; *Gill v. DeFrank*, 98-CV-7851, 2000 WL 897152, at *1-2 (S.D.N.Y. July 6, 2000) (granting defendants' motion for summary judgment dismissing prisoner's First Amendment free-exercise claim that defendants caused prisoner to miss one

three occasions, district courts in this Circuit have specifically held that causing a prisoner to miss one Jumu'ah service fails to state an actionable claim under the First Amendment.[43]

Finally, for the reasons stated above, I find that the problems with Plaintiff's First and Fourteenth Amendment claims are substantive, not merely formal.  Simply stated, if Plaintiff possessed facts plausibly suggesting an actionable constitutional claim against Defendants, he would have alleged those facts in his otherwise specific Complaint.

For all of these reasons, <u>I recommend also that Plaintiff's remaining constitutional claims --i.e., his Section 1983 claims against Defendants DOCS, Fischer and LeClaire--be *sua sponte* dismissed with prejudice for failure to state a claim upon which relief may be granted.</u>

### B.   Whether Plaintiff Has Failed to State a Claim Under RLUIPA

RLUIPA provides that "[n]o government shall impose a *substantial burden* on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling

---

weekly religious service) [citations omitted], *aff'd*, 8 Fed. Appx. 35 (2d Cir. 2001) (unpublished decision).

[43]     *See Persad v. Savage*, 02-CV-0336, 2004 WL 1570286, at *7 (W.D.N.Y. May 25, 2004) ("Despite the cancellation of one (or even two) Juma service, Plaintiffs and other Muslim inmates were free to practice their religion [for purposes of the First Amendment].""), *adopted*, 02-CV-0336, 2004 WL 1858140 (W.D.N.Y. Aug. 19, 2004); *Boomer v. Irvin*, 963 F. Supp. 227, 230-31 (W.D.N.Y. 1997) (granting defendant's motion for summary judgment dismissing prisoner's free-exercise claim, asserted under both the First Amendment and the RFRA, that defendants prevented the prisoner from attending one Muslim Jumu'ah service due to keeplock confinement); *Troy v. Kuhlmann*, 96-CV-7190, 1999 WL 825622, at *4, 14-15 & n.4 (S.D.N.Y. Oct. 15, 1999) (granting defendants' motion for summary judgment dismissing prisoner's First Amendment free-exercise claim that defendants caused prisoner, of the Muslim faith, to miss one weekly religious service on Friday, May 31, 1996) [citations omitted].

governmental interest."  42 U.S.C. § 2000cc-1(a) [emphasis added].  With regard to the threshold

issue presented to the Court in analyzing a RLUIPA claim (i.e., whether a "substantial burden"

has been alleged), it should be noted that "[a] substantial burden is more than a mere

inconvenience."  *Gill v. DeFrank*, 98-CV-7851, 2000 U.S. Dist. LEXIS 9122, at *4-5 (S.D.N.Y.

June 30, 2000).  With regard to the second issue presented to the Court in analyzing a RLUIPA

claim (i.e., whether the imposition of the burden was in furtherance of a compelling

governmental interest, and whether the least restrictive means of furthering that compelling

governmental interest was used), it should be noted that an act by prison officials challenged by

an incarcerated person is examined under a test less restrictive than that of ordinary

"reasonableness"; rather, it must merely be "reasonably related to legitimate penological

interests."  *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of*

*Shabazz*, 482 U.S. 349 [1987]).

　　　　Here, Plaintiff bases his RLUIPA claim on a one-time occurrence: his inability to attend

the Jumu'ah service that was held on Friday, March 19, 2004, at Shawangunk C.F.  (*See*, *supra*,

Part I.A. of this Report-Recommendation.)  He has not alleged even conclusorily that Defendants

(or anyone) *repeatedly* denied Plaintiff (or any Muslim incarcerated in DOCS) the right to attend

Jumu'ah services.  (*Id*.)  Furthermore, he alleges facts plausibly suggesting that Defendant John

Doe # 1 caused him to miss the service due to a mistaken belief that refusing to permit Plaintiff

to leave the Mess Hall for the one-and-three-quarter-hour period of time in question was

necessary to maintain order and safety at Shawangunk C.F.  (*Id*.)  Finally, Plaintiff alleges facts

plausibly suggesting that Defendant John Doe # 2, or at least the IGRC (of which Defendant John

Doe # 2 was a member), acknowledged the mistake and granted Plaintiff most, if not all, of the

relief he requested in his grievance.  (*Id*.)

These allegations simply do not state a claim under RLUIPA.  Courts have found that causing a prisoner to miss one religious service does not constitute a violation of RLUIPA.[44] This is especially true where, as here, (1) the deprivation in question was alleged to have been effected through a mistake,[45] (2) the mistake was made with the express intent to maintain order and safety at Shawangunk C.F.,[46] and (3) the mistake was followed by an acknowledgment of error and efforts to rectify the situation.[47]  With regard to this last point, it bears repeating that Plaintiff's Complaint clearly alleges that, in the written ruling issued on April 15, 2004, deciding Plaintiff's grievance regarding the deprivation in question, the Shawangunk C.F. IGRC expressly stated that the actions of John Doe # 1 were in error.  Specifically, it stated that the "D2 housing

---

[44]        *See Thompson v. Quartermain*, 01-CV-0001, 2007 U.S. Dist. LEXIS 73207, at *6 (S.D. Tex. Sept. 30, 2007) ("An isolated denial, such as having to miss a single religious service, does not constitute a substantial burden on a prisoner's right to practice his religion [for purposes of eighth RLUIPA or the First Amendment].");  *Welch v. Talmadge*, 05-CV-1750, 2006 U.S. Dist. LEXIS 70387, at *22-23 (E.D. Pa. Sept. 7, 2006) (granting defendants' motion for summary judgment dismissing prisoner's RLUIPA claims because "[t]he inability to attend bible study on one occasion does not constitute a substantial burden on [a prisoner's] exercise of his religion");  *cf. Boomer v. Irvin*, 963 F. Supp. 227, 230-31 (W.D.N.Y. 1997) (granting defendant's motion for summary judgment dismissing prisoner's *RFRA* claim that defendants prevented the prisoner from attending one Muslim Jumu'ah service due to keeplock confinement) [emphasis added].

[45]        *See Hysell v. Pliler*, 04-CV-0355, 2008 U.S. Dist. LEXIS 2721, at *24-26 (E.D. Cal. Jan. 14, 2008) (dismissing prisoners RLUIPA claim where, *inter alia*, "the denial of [religious] materials [on a few specific instances] was admitted by prison officials to be an error . . . .").

[46]        As the Supreme Court has observed, RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety."  *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

[47]        *See Hysell*, 2008 U.S. Dist. LEXIS 2721, at *24-26 (dismissing prisoner's RLUIPA claim where "the denial of [religious] materials [on a few specific instances] was . . . an error and efforts were taken to rectify the situation").

18

unit was being searched at the time and not D1 unit," that "inmates housed in D1 during the search and scheduled for religious services were allowed to attend services on time without compromising the security of the search," and that Plaintiff "could've been offered the same opportunity."[48]

    For these reasons, I recommend that Plaintiff's RLUIPA claims be dismissed for failure to state a claim upon which relief may be granted.

### C.    Whether Any of Plaintiff's Claims Are Barred by the Applicable Statute of Limitations

    Plaintiff is partly mistaken and partly correct when he argues that the applicable limitations period that governs his claims is not three years (under 42 U.S.C. § 1983) but four years (under 28 U.S.C. § 1658[a]).  (Dkt. No. 13, Plf.'s Memo. of Law, at 3.)

    He is mistaken in that the statute giving rise to his claims under the First, Eighth and Fourteenth Amendments is 42 U.S.C. § 1983, not RLUIPA.  Section 1983 provides, in pertinent part, "Every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983 [emphasis added].  Here, Plaintiff is alleging, in part, that Defendants subjected him to the deprivation of rights under the Constitution (i.e., the First, Eighth and Fourteenth Amendments).  It is well settled that the statute of limitations for Section 1983 actions brought in

---

    [48]    (Dkt. No. 1, Ex. B [Plf.'s Compl., attaching the written ruling of the 4/5/04 Shawangunk C.F. IGRC regarding Plf.'s grievance, which was incorporated by reference by the allegations contained in Paragraphs 14 and 15 of Plf.'s Compl.].)  *See* Fed. R. Civ. P. 10(c) ("Statements in a pleading may be adopted by reference in a different part of the same pleading . . . .  A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

a federal court sitting in New York is three years.[49]  As a result, it is inappropriate to rely on the

four-year limitations period provided by 28 U.S.C. § 1658(a) when analyzing the timeliness of

his First, Eighth and Fourteenth Amendment claims, since Section 1658(a) applies only when a

limitations period is not "otherwise provided by law."  28 U.S.C. § 1658(a).

However, only *some* of Plaintiff's First, Eighth and Fourteenth Amendment claims (i.e.,

those based on events occurring prior to April 10, 2004, which was three years before he signed

his Complaint in this action) appear barred by the applicable three-year limitations period.   More

specifically, Plaintiff's constitutional claims against Defendants John Doe # 1 and John Doe # 2

were based on events occurring on March 19, 2004, and April 5, 2004, which are outside the

applicable three-year limitations period.  (*See*, *supra*, Part I.A. of this Report-Recommendation.)

It is only his constitutional claims against Defendants Fischer and LeClaire–which *apparently*

arise from their (alleged) failure to reverse Superintendent Smith's decision of April 13, 2004, on

appeal–that fall within the applicable three-year limitations period.  (*Id*.)  (I use the word

"apparently" because, as explained above in Part III.A. of this Report-Recommendation, Plaintiff

does not allege what facts gave rise to his constitutional claims against Defendants Fischer and/or

LeClaire.)

Moreover, Plaintiff appears *correct* when he argues that his civil rights claims arising

solely under RLUIPA are governed by a four-year limitations period.  *See Williams v. Gerges*,

05-CV-2555, 2005 WL 1773857, at *5-6 (E.D.N.Y. July 26, 2005).

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's

---

[49]      *See Owens v. Okure*, 488 U.S. 235, 251 (1989) ("New York's 3-year statute of
limitations governing general personal injury actions" applies to Section 1983 claims).

constitutional claims (i.e., his Section 1983 claims) against Defendants John Doe # 1 and John Doe # 2 as untimely, but that the Court otherwise reject Defendants' untimeliness argument.

     **D.**     **Whether Plaintiff's Claims Against Defendant DOCS Are Barred by Section 1983's Express Language and/or the Eleventh Amendment**

     I agree with Defendants that Plaintiff's constitutional claims against Defendant DOCS are barred by Section 1983's express language and, alternatively, by the Eleventh Amendment to the United States Constitution.  (Dkt. No. 11, Part 2, at 2 [Defs.' Mem. of Law].)  However, I have trouble concluding that Plaintiff's RLUIPA claims against Defendant DOCS are also barred by the Eleventh Amendment.  (Dkt. No. 13, Plf.'s Memo. of Law, at 2.)

     Generally, plaintiffs may sue governmental entities (such as DOCS) under RLUIPA because, as Plaintiff argues, under RLUIPA, "[t]he term 'government' **(A)** means– **(i)** a State, county, municipality, or other governmental entity created under the authority of a State; **(ii)** any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and **(iii)** any other person acting under color of State law; and **(B)** for the purposes of sections 2000cc-2(b) and 2000cc-3 of this title, includes the United States, a branch, department, agency, instrumentality, or official of the United States, and any other person acting under color of Federal law."  42 U.S.C. § 2000cc-5(4) [emphasis in original].

     The more significant issue before the Court concerns the applicability, under the circumstances, of the Eleventh Amendment, which generally grants states sovereign immunity from such suits unless (1) Congress has abrogated a state's sovereign immunity through a statutory enactment or (2) a state has expressly waived its sovereign immunity.  It appears that, after the enactment of RLUIPA in 2000, states could accept federal funds for prison activities or

programs only on the condition that they comply with RLUIPA, which effectively constituted a

waiver of their sovereign immunity under the Eleventh Amendment.[50]  As a result, if New York

State has accepted federal funds for prison activities or programs, it would appear that it has

waived its sovereign immunity.

Here, it is questionable whether Plaintiff has alleged facts plausibly suggesting that New

York State did so waive its sovereign immunity.  Plaintiff has alleged, in his opposition

memorandum of law, that RLUIPA "is an exception to the 11th Amendment's restrictions on

federal suits against States and their agencies–DOCS."  (Dkt. No. 13, Plf.'s Memo. of Law, at 2.)

Granted, Plaintiff's statement makes no mention of the acceptance of any federal funds by New

York State, as did the plaintiff in the case of *Orafan v. Goord*, 00-CV-2022, 2003 U.S. Dist.

LEXIS 14277, at *24 (N.D.N.Y. Aug. 14. 2003) (Treece, M.J.) ("Plaintiffs have sufficiently

alleged that DOCS is a state agency which receives federal funds [for purposes of the waiver of

Eleventh Amendment sovereign immunity under RLUIPA], and in assuming such a statement is

accurate, the Defendants' Motion to Dismiss is recommended denied on this ground."), *adopted

by* Decision and Order (N.D.N.Y. filed Sept. 30, 2003) (Kahn, J.).  However, whether or not New

York has accepted such funds would appear to be a fact of which Plaintiff would have absolutely

no personal knowledge.  Under the circumstances, I am simply unable to conclude with any

confidence that Plaintiff's RLUIPA claim against DOCS fails to state a claim because of the

---

[50]     *See Gerhardt v. Lazaroff*, 221 F. Supp.2d 827, 851-52 (S.D. Ohio 2002) (state
was not immune under Eleventh Amendment from suit by prisoners alleging violations of
RLUIPA since state's acceptance of federal funds for prison activities or programs on condition
that it comply with RLUIPA constituted waiver of immunity), *aff'd sub nom.*, *Cutter v.
Wilkinson*, 423 F.3d 579 (6th Cir. 2005); *accord*, *Smith v. Allen*, 502 F.3d 1255, 1276 & n.12 (11th
Cir. 2007); *Marsh v. Granholm*, 05-CV-0134, 2006 WL 2439760, at *12 (W.D. Mich. Aug. 22,
2006).

Eleventh Amendment.  Rather, that claim fails to state a claim for the reasons stated above in Part III.B. of this Report-Recommendation.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's constitutional claims (i.e., his Section 1983 claims) against Defendant DOCS as barred by the express language of Section 1983 and/or the Eleventh Amendment, but that the Court otherwise reject Defendants' argument as it relates to Plaintiff's RLUIPA claims against Defendant DOCS.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 11) be **GRANTED**, and that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 10, 2008
    Syracuse, New York

George H. Lowe
United States Magistrate Judge